UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 11cr10066-LTS |
| | ) | |
| JOHN CUSICK | ) | |

ORDER ON MOTION FOR JUDGMENT OF ACQUITTAL

February 9, 2012

SOROKIN, M.J.

Pending before the Court is Defendant John Cusick's Motion for Judgment of Acquittal (Docket #42). For the reasons that follow, Defendant's Motion is DENIED.

I.    PROCEDURAL BACKGROUND

On February 23, 2011, Defendant was indicted for two violations of 16 U.S.C. § 1857(1)(L) arising out of events that took place while Defendant was working as a crew member on a commercial fishing vessel in July of 2010. Count one of the Indictment charged that Defendant forcibly assaulted, impeded, intimidated, sexually harassed, and interfered with a federal at-sea monitor and data collector while Defendant was working on commercial Fishing Vessel Sea Farmer II during a commercial fishing trip from on or about July 8, 2010, through July 14, 2010.[1] Count two of the Indictment charged that, on or about July 15, 2010, while working on commercial Fishing Vessel Sea Farmer II during a commercial fishing trip, Defendant forcibly

---

[1] The Court orally granted a motion to amend the Indictment prior to trial. Count one of the initial Indictment referenced the time period of July 8, 2010, through July 15, 2010, thus encompassing the time period and conduct alleged as the basis for Count two.

assaulted, impeded, intimidated, sexually harassed, and interfered with a federal at-sea monitor and data collector by assaulting the federal at-sea monitor and data collector by hugging her without consent and inserting his tongue in her ear. After a four-day jury trial, Defendant was convicted on the first count of the Indictment and acquitted on the second count of the Indictment. On December 22, 2011, Defendant filed the present Motion for Judgment of Acquittal.

II. STANDARD

Federal Rule of Civil Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The conviction is proper if "after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. Boulerice, 325 F.3d 75, 79 (1st Cir. 2003) (quoting United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994)). The court "do[es] not weigh the credibility of witnesses or 'assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence.'" United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002) (quoting United States v. Rivera-Ruiz, 244 F.3d 263, 266 (1st Cir. 2001)). Instead the court must simply consider "all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict." Boulerice, 325 F.3d at 79 (quoting United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998)). "[A]s long as the guilty verdict finds support in a 'plausible rendition of the record,' it must stand." Moran, 312 F.3d at 487 (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).

III.　　DISCUSSION

The Court gave the following jury instruction with respect to the first count of the Indictment:

> This offense is set forth in section 1857(1)(L) of Title 16 of the United States Code, a federal statute. The relevant section of that statute reads as follows:
>
> "It is unlawful . . . for any person . . . to . . . forcibly assault, . . . impede, intimidate, sexually harass . . . or interfere with . . . any data collector employed by the National Marine Fisheries Service or under contract to any person to carry out responsibilities under [the Magnuson-Stevens Fishery Conservation and Management Act.]"
>
> To prove a person committed the criminal offense defined by this statute, the government must establish, beyond a reasonable doubt, the following – That the defendant, on or about July 8, 2010, through July 14, 2010:
>
> (1) Forcibly;
>
> (2) Assaulted, impeded, intimidated, sexually harassed, or interfered with
>
> (3) A data collector employed by the National Marine Fisheries Service or under contract to any person to carry out responsibilities under the Magnuson-Stevens Fishery Conservation and Management Act;[2] and
>
> (4) the defendant did so knowingly.
>
> Let me explain the first of these four elements: forcibly. All of the acts - assault, impede, intimidate, sexually harass, and interfere with - are modified by the word "forcibly." Thus you cannot find the defendant guilty unless you find, beyond a reasonable doubt, that he acted forcibly. Forcibly means by use of force. Physical force is obviously sufficient. You may also find that a person who, in fact, has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon such person has acted forcibly. In such a case the threat must be a present one. A threat to use force at some unspecified time in the future does not satisfy this element.
>
> The second is that the defendant forcibly assaulted, impeded, intimidated, sexually harassed, and interfered with the victim. I instruct you that it is not

---

[2] In his motion, Defendant does not argue that there was insufficient evidence to find that T.B. was a data collector under the third element.

necessary for the government to prove that the defendant did all of these things, that is, assaulted, impeded, intimidated and so forth. It is sufficient if the government proves beyond a reasonable doubt that the defendant did any one of these several alternative acts as charged. You must, however, be unanimous in your finding of which of these acts (assaulted, impeded, intimidated, sexually harassed, or interfered with) has been proven. I will define for you the acts specified by the statute.

Assault is an unlawful attempt or offer with force and violence to do injury to the person of another, with such apparent present possibility of carrying out such an attempt as to put the person against whom the attempt was made in fear of personal violence.

Impede means stopping progress, obstructing, or hindering.

Intimidate means the use of any words or actions intended or designed to make another person timid or fearful or to make that person refrain from doing something that person would otherwise do, or do something that person would otherwise not do.

Sexually harass means to engage in conduct with sexual connotations that unreasonably interferes with a person's work performance or to engage in conduct with sexual connotations that creates an intimidating, hostile, or offensive environment. In determining whether conduct constitutes sexual harassment, you should consider the totality of the circumstances, including the nature of the conduct and the context in which it occurred. To find the defendant guilty of sexual harassment, you must find, beyond a reasonable doubt, that the defendant knew his conduct had sexual connotations and that either (1) he knew his conduct unreasonably interfered with a person's work performance, or (2) he knew his conduct was creating an intimidating, hostile, or offensive environment. To find sexual harassment, you must unanimously agree as to prong 1, prong 2, or both.

Interfere with means to come into collision with, to intermeddle, to hinder, to interpose, to intervene.

So, to recap the second element, the government must prove beyond a reasonable doubt that the defendant assaulted, impeded, intimidated, sexually harassed or interfered with [T.B.]. You must be unanimous in your finding of which of these acts (assaulted, impeded, intimidated, sexually harassed or interfered) has been proven and you must be unanimous that the defendant did so forcibly, as I have explained that term.

The third element is that [T.B.] was a data collector employed by the National Marine Fisheries Service or under contract to any person to carry out responsibilities under the Magnuson-Stevens Fishery Conservation and Management Act. A data collector collects data. The Magnuson-Stevens Fishery and Conservation and Management Act provides, among other things, for a national program for the conservation and management of the fishery resources of the United States. The collection of reliable data is essential to the effective conservation, management, and scientific understanding of the fishery resources of the United States. Administration and enforcement of the Magnuson-Stevens Act is delegated to the National Oceanic and Atmospheric Administration ("NOAA") including NOAA-OLE (Office of Legal Enforcement), which was formally known as National Marine Fisheries Service. The parties have stipulated that the Sea Farmer II is a "fishing vessel" under the law.

The fourth element is that the defendant engaged in his conduct knowingly and intentionally. Knowingly means that the act was done voluntarily and intentionally and not because of mistake or accident.

So if you find that the government has proved each one of these elements beyond a reasonable doubt, then you should find the defendant guilty as to Count I. If you do not find that the government has proved all of these elements beyond a reasonable doubt, then you must find the defendant not guilty as to Count I.

Once a jury instruction is given it becomes the law of the case, unless the instruction is legally incorrect. United States v. Angiulo, 897 F.2d 1169, 1196 (1st Cir. 1990). Defendant does not object to the jury instruction. Defendant argues that the evidence was insufficient to permit a reasonable finder of fact to conclude beyond a reasonable doubt that Defendant forcibly assaulted, impeded, intimidated, sexually harassed, or interfered with T.B. and that Defendant did so knowingly and intentionally.

In this case, context matters. T.B., as part of her job as a data collector, was placed on board the vessel for its eight-day fishing trip. The evidence supports the conclusion that the crew of this vessel did not welcome a representative of the federal government (albeit indirectly in the form of an outsourced data collector) placed by legal mandate on board the vessel in order to

5

monitor and to catalogue the fishing activity, including fish caught, fish discarded, etc., as part of the federal government's regulation of the fishing industry.

T.B. was the only female on this vessel during the trip. The crew was all male. The four members of the crew included Defendant, Paul Beal, Peter Cusenza, and Captain Clark Sandler. Defendant, Beal, and the Captain had worked together for a year prior to this trip and Cusenza knew Beal prior to the trip. The four men are each white. T.B. is a minority and not from the Gloucester region. On this trip, the vessel left Gloucester and steamed for eight to twelve hours to reach the first fishing area. Once the vessel lost sight of land, the vessel was at sea without sight of land until it returned to Boston on the last day of the trip. The record amply establishes that T.B. was without cell phone service, without any other means of ready communication with the outside world, without contact with family, friends, or supervisors, and, obviously, without the ability to leave work and go home during the trip. T.B. was dependent on the crew for her safety and well-being. In addition, Beal and the Captain, the more senior members of the crew, removed themselves from interaction with Defendant, T.B., and Cusenza (a twenty-three year old on his first trip with this boat). The Captain spent the vast majority of his day, "23 hours and 45 minutes," in the pilothouse one level up and thus completely removed from the other crew. Beal, the crew member with the greatest amount of experience, spent the majority of his free time in his single bunk room by himself. Thus, the jury could reasonably conclude that absent from this fishing trip were the moderating influences that might arise from the presence of either the person with authority on the trip, the Captain, or the oldest crew member with the most years at sea on this vessel.

On the trip, T.B. received her own bunk room off the galley/dining room area. The door on her bunk room had no lock. Cusenza and Defendant shared an adjacent bunk room. Beal had his own bunk room next to these rooms. The Captain slept and stayed upstairs in the pilot house, except for a few minutes each day to get his meals and use the restroom.

The barrage of sexual comments and harassment to which Defendant subjected T.B. began the moment she stepped on board the vessel while docked in Gloucester harbor when he said "they never had a girl at-sea monitor or a girl on their boat before and that we were gonna have fun." His steady and relentless stream of sexual comments continued throughout the trip.

Defendant made these comments to T.B. while she was performing her job duties, while she was performing work at the galley table, while she was eating or relaxing at the table (the common area of the boat), and while she was in her bunk room. Defendant asked T.B. for sex all the time. He told her that "he wanted to spread [her] legs on the galley room table," that he wanted to slap her buttocks, that "he wanted to tear [her] pussy up," and that he wanted to suck on her toes. He told her that he had sucked on her soap and washcloth. He asked her for a pair of her underwear and then insinuated that he had already taken a pair. He told her that "[her] nipples were hard," and said "that he through they probably were really big and round." He asked her if he could sleep in her bunk with her. He asked if he could shower with her and, when she told him no, he said "[w]ell, you know, the bathroom lock doesn't work anyway." T.B. took no further showers as a result. At one point, T.B. woke up from sleeping in her bunk to find Defendant hanging in the doorway of her room. Defendant then told T.B. "I like watching you sleep." At another time, Defendant stood in T.B.'s way while she was trying to go out to the deck to work. Defendant told T.B. that the only way he would let her through was if T.B. shook his hand. T.B.,

needing to get to work, extended her hand. Defendant took T.B.'s hand and massaged the middle of her palm in a sexual manner.

Unfortunately, the trial evidence does not reveal the chronological order of Defendant's words and deeds. For whatever reason, the Government made no effort to elicit the sequence of these events other than that they occurred before the last day but after the vessel first reached the fishing grounds after steaming out of port for eight to twelve hours.

In response to Defendant's words and deeds, T.B. never made any sexual gesture or statement to Defendant. T.B. typically responded to Defendant's actions by looking down, walking away, or asking Defendant why he would say those things. Because of Defendant's repeated sexual comments regarding T.B.'s buttocks, she took to leaving his presence face forward and stepping backwards.

On July 14, 2010, the second to last day of the trip, T.B. presented Defendant with a harassment notice. The notice stated that it was unlawful to intimidate, resist, oppose, impede, sexually harass, bribe, or interfere with an observer.[3]

---

[3] The Government's rendition of the facts goes further in a material way. The Government argues that "[t]he defendant's criminal conduct towards T.B. did not stop even after she showed him the harassment notice." Gov't's Memorandum in Opposition at 10 & n. 6 (Docket #44). For evidentiary support for this proposition, the Government proceeds to cite, only, the conduct for which the Government acknowledges "the defendant was acquitted." Id. at n.6. Insofar as the Government is suggesting that it satisfied its burden of proof on Count one by virtue of the forcible conduct charged only under Count two (and for which the jury acquitted defendant), the Court rejects that suggestion. Insofar as the Government is suggesting that the later, acquitted conduct, provides context, meaning or understanding to the earlier conduct under consideration, the Government has not explained the legal basis for the Court to draw inferences from the Count one conduct based upon the conduct alleged in Count two for which Defendant was acquitted. While I recognize that in some circumstances Courts may lawfully consider acquitted conduct in determining the proper sentence for a conviction, United States v. Anonymous, 629 F.3d 68, 77 (1st Cir. 2010) (citing United States v. Watts, 519 U.S. 148, 157 (1997) (per curiam)), that presents a different question than determining beyond a reasonable

In light of the foregoing facts, the Court rejects the gravaman of Defendant's contention, that the evidence fails to support, beyond a reasonable doubt, the jury's determination that Defendant had the "present ability to inflict bodily harm upon another" and "threaten[ed] or attempt[ed] to inflict bodily harm upon such person." First, Defendant had the present ability throughout the trip to inflict bodily harm upon T.B. by the use of physical force. Moreover, this case arises in an unusual factual context. The vessel was relatively small. Defendant and T.B. were in regular face-to-face contact throughout the trip. Essentially, they were living in a common household. T.B. was a solitary, isolated female official on the vessel, largely cut off from the outside world. T.B. and the crew lived almost exclusively outside the presence of the Captain. Defendant subjected T.B. to a steady relentless barrage of sexual harassment, in word and deed, that, under the totality of the circumstances the jury could find, beyond a reasonable doubt, satisfied the forcible element as defined in the instructions. Taking the facts in the light most favorable to the jury's verdict, the relentless nature of Defendant's activity, the words he selected, the manner and context in which he delivered them, and the deeds he committed, support the jury's conclusion that he was threatening and able to imminently inflict bodily harm.[4]

---

doubt that the evidence supports a jury verdict and basing that conclusion, in part, upon acquitted conduct. Accordingly, I decline to do so in this case.

[4] Many of the Defendant's statements did not necessarily, literally, communicate a present threat or attempt to inflict bodily harm. For example, statements Defendant made using phrases such as "I want to . . ." However, the law does not confine the jury to the literal meaning of the words Defendant selected. The jury was free to consider the factual context in which the Defendant made the statements, i.e. the facts known to Defendant, and, on this record, determine that Defendant made a present threat to inflict bodily harm rather than merely expressed an aspirational wish, as he suggests. The First Circuit has ruled that whether a statement is a threat presents a fact question for the jury to be determined by considering whether the person making the statement "should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made" in light of the "factual context in which the statement was made." United States v. Fulmer, 108 F.3d 1486, 1491-92 (1st Cir. 1997). While the First Circuit

Second, at some point during the trip, but, based upon the evidence, certainly after the vessel had steamed out from view of land, Defendant told T.B. "that he wanted to tear [her] pussy up." In this case, the Court finds that a rational factfinder could find, beyond a reasonable doubt, that this action constituted forcible sexual harassment. T.B. testified that Defendant's comments made her feel "[s]cared and insulted, sad." While not dispositive, this is relevant evidence supporting the jury's conclusion. See United States v. Walker, 835 F.2d 983, 987 (2d Cir. 1987) ("the victim's subjective state of mind is not irrelevant to determining whether the amount of force threatened or displayed was sufficient to make fear reasonable"). Simply put, the jury could reasonably conclude, especially in the context of the surrounding facts, that this face-to-face statement carried with it a present threat to use force. See United States v. Hertular, 562 F.3d 433, 441 (2d Cir. 2009) (noting that voice mail message stating "I'm gonna f[***] you up" fails to satisfy imminence requirement of the word "forcible" in 18 U.S.C. § 111, a statute with elements similar to those of 16 U.S.C. § 1857(1)(L), but that a face-to-face confrontation stands in a different posture).

Insofar as Defendant advances an argument that the evidence fails to support the jury's conclusion that Defendant acted knowingly under the statute, the Court rejects this argument as well. Even in the rough and tumble environment of a fishing vessel, the present record amply supports the jury's conclusion that defendant knew his conduct was creating an intimidating, hostile, or offensive environment. Three examples of many suffice to illustrate the point. The comments and deeds to which Defendant subjected T.B. were not garden variety, e.g. standing in

---

was considering a different statute with somewhat different requirements, its teachings, nonetheless, apply here.

her door and watching her sleep, taking her underwear and sucking on it, or saying he wanted to tear up her pussy. Moreover, in response to Defendant's comments, T.B. began leaving his presence face forward which is evidence supportive of the offensive nature of Defendant's acts and is evidence that he so knew.

Thus the Court finds that there was sufficient evidence in the record so that a rational factfinder could find, beyond a reasonable doubt, that Defendant violated 16 U.S.C. § 1857(1)(L).

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal is DENIED.

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge